ROBERTSON, AND OTHERS )
       v. )   CHANCERY.
THE HEIRS OF MATHEW )
BROOKS DEC'D. )

HAYES and WHITESIDES, for the complainants, ■

TRIMBLE, in support of the plea,

WHITE, J., delivered the following resolution of the court;—

In opposition to this plea, two points are made. First, that when the contract was made, Brooks had no title to these lands, and that when grants should be obtained, he was to hold one-third of each tract in trust for the complainants, wherefore the statute will not apply so as to bar the relief sought. Second, that if this had been a contract for the sale of a legal title then in Brooks, the statute would not avail the defendants, because the complainants have performed their part of the argument, and it would be a fraud in the defendants to reap the benefit without paying the consideration. Rob. on Frauds 134, Kirby, 400. Sch & Lef. 41, 2 Day, 225.

Each of these positions have been contested by the counsel of the defendants.

*(1)* Upon the first of these positions, we do not feel disposed to give any opinion, being satisfied that the second is a sufficient objection to the plea.

*(2)* We must in forming an opinion in this case, take for granted that the facts stated in the bill are true.

We are very desirous in every case where this statute is relied upon, to keep pretty near the words of it, but to adhere to it literally, will, in some cases, not promote the views of those who framed it.

If in any case, performance on one side, of an agreement not evidenced by writing under the signature of the party, will enable a court to enforce the agreement against the other, it appears to the court that this is such a case.

From the earliest times of procuring titles to lands in this country to the present day, it has been the usage for a man who located warrants, and, at his own expense, procured grants to issue, to be compensated for his trouble and expense by a conveyance of a part of the land thus patented. The most usual compensation has been one-third in some instances, it has been more, and at some times, although but very seldom, less. Say nothing of the express agreement alleged in this bill, but state the facts relative to the case which are therein mentioned, and almost every man acquainted with the customs of the country, would infer the agreement which the complainants alleged to have been made. The complainants were professed locators, three warrants are put into their hands, they ascertain and describe vacant lands, enter the warrants, procure surveys; attain grants in the name of those to whom the warrants belonged,

47

and pay all the expenses. From these facts, consistently with the common usage and understanding of mankind, any person will say, that for this trouble, and these expenses it was the intention of each party that the grantee should convey to the locators, a part of the lands thus granted; which part should be one-third, unless there was something to show that at that particular time there was some usage to vary from that quantity. In this case, then, the facts prove the existence of the agreement. Again: the facts alleged, are in their nature, capable of being disproved, if they are not true. They are such as must be notorious—the location is in writing; it is furnished the entry taken, who most usually puts down the name of the locator; the entry taken, survey, or, register, Secretary, Governor, all public officers, are employed, and those of them entitled to fees, are paid, by the locators.

*(3)* Lastly, in such cases, the complainants cannot be placed in *statu quo*. You cannot restore to the locators the benefit of their exclusive knowledge of vacant land; you cannot annul what has taken place. The land is granted, and the defendants have the benefit of it; shall they stand behind this statute and enjoy the benefit of that property which honestly belongs to the complainants? Surely the Legislature never intended this.

For these reasons, we hold the plea to be insufficient.